# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | MBD NO. 20-MC-91138 |
| | ) | |
| Applicant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF APPLICATION TO SHOW CAUSE WHY
ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

This case is before the Court on the application of the Equal Employment Opportunity

Commission ("EEOC" or "the Commission") for an order to show cause why an administrative

subpoena should not be enforced.  EEOC is currently investigating a charge of employment

discrimination against Respondent, Charter Communications, Inc. ("Charter" or "Respondent"),

under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title

VII").  The charge under investigation, Samantha Fenderson v. Charter Communications, Charge

No. 523-2018-00971, alleges sex (pregnancy) discrimination and retaliation.  Charging Party,

who was employed by Respondent as a Field Technician, alleges that she requested multiple

accommodations to her job and uniform as a result of her pregnancy, including a uniform that fit

correctly and modifications to her job duties.  Charging Party alleges that her manager was

openly hostile to her pregnancy and that Respondent refused to provide the accommodations

requested.  Charging Party further alleges that Respondent failed to accommodate her need for

breaks to express breast milk upon her return from maternity leave.  Charging Party alleges that

1

other similarly situated employees not in her protected class have received more favorable terms and conditions of employment.

After several attempts to obtain Respondent's voluntary compliance with EEOC's requests for information failed, EEOC issued Subpoena No. NY-A20-006 seeking documents required for its investigation.  The Subpoena includes the following requests for information:

1. Provide a list, in the form of a sortable Excel file, of all Field Technicians working in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, or Connecticut, who, at any time since September 1, 2016, requested a reasonable accommodation to a disability.  For each employee provide:

   a. Last name;
   b. First name;
   c. Sex;
   d. Address;
   e. Personal phone number;
   f. Position/job title at time of request;
   g. Work location;
   h. Date of request;
   i. Work restriction;
   j. Indicate whether an accommodation was provided; and
   k. If an accommodation was provided, describe the accommodation.

2. Provide a list, in the form of a sortable Excel file, of all Field Technicians working in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, or Connecticut, who, at any time since September 1, 2016, requested a reasonable accommodation to pregnancy, a condition related to pregnancy, and/or child birth.  For each employee provide:

   a. Last name;
   b. First name;
   c. Sex;
   d. Address;
   e. Personal phone number;
   f. Position/job title at time of request;
   g. Work location;
   h. Date of request;
   i. Work restriction;
   j. Indicate whether an accommodation was provided; and
   k. If an accommodation was provided, describe the accommodation.

2

3.  Documents (including e-mails, memoranda, or notes made in any database or other
    electronic program used to manage and store information related to employee
    accommodation requests) concerning Respondent's receipt and evaluation of
    Charging Party's request for a lifting restriction and restriction on heights/climbing.

(Subpoena No. NY-A20-006 attached as Exhibit J to Declaration of Feng An, Director, EEOC

Boston Area Office ("An Decl.", filed herewith).

To date, Charter has refused to comply with EEOC's Subpoena, and that refusal has

delayed and hampered the investigation of this charge of discrimination, thereby preventing

EEOC from fulfilling its enforcement and investigatory duties.  The Commission therefore

applies to this Court for an Order to Show Cause Why the Subpoena Should Not be Enforced.

## FACTUAL BACKGROUND

On April 2, 2018, Samantha Fenderson (hereinafter "Charging Party") submitted a

written complaint of discrimination against Respondent, alleging sex discrimination (pregnancy).

Declaration of Feng An ("An Decl."), filed herewith, ¶ 4(a).  On December 12, 2018, the EEOC

provided notice of this charge to Respondent; the notice indicated that Charging Party had filed a

charge of discrimination against Charter alleging sex discrimination (pregnancy) and retaliation

in violation of Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII").

An Decl. at ¶ 4(b).  On February 1, 2019, Charging Party perfected her charge by signing and

verifying a Charge of Discrimination with EEOC alleging sex discrimination (pregnancy) and

retaliation in violation of Title VII.  *Id.* at ¶ 4(c).

Charging Party, who was employed by Charter as a Field Technician, alleges that she

requested multiple accommodations to her job and uniform as a result of her pregnancy,

including a uniform that fit correctly and modifications to her job duties.  Charge of

Discrimination, attached as Exhibit C, to An Decl.  Charging Party alleges that her manager was

openly hostile to her pregnancy and that Charter refused to provide the accommodations she

requested.  *Id.*  Charging Party further alleges that Charter failed to accommodate her need for breaks to express breast milk upon her return from maternity leave.  *Id.*  Charging Party alleges that "other similarly situated employees not in [her] protected class are subject to more favorable terms and conditions of employment."  *Id.*

Upon receipt of Charging Party's perfected Charge of Discrimination, EEOC served Charter with a copy of the Charge.  An Decl. at ¶ 4 (c).  On July 1, 2019, EEOC sent Charter a request for information seeking all documents relating to Charging Party's requests for accommodation to her pregnancy (including her request for a new uniform, light duty, or other reasonable accommodation).  *Id.* at ¶ 4(d).  The Commission's July 1, 2019, request for information also sought a list of employees in New England who, since September 1, 2016, had sought a reasonable accommodation for a disability, along with information that would permit the Commission to contact these individuals and information about the date of the request and whether the accommodation was provided.  *See* Exhibit D to An Decl.  The Commission requested identical information for employees in New England who, since September 1, 2016, had requested a reasonable accommodation for a condition related to pregnancy or childbirth.  *Id.* Charter failed to respond to this request.  An Decl. at ¶ 4(d).

On August 9, 2019, after receiving no response to its July 1, 2019 request for information, EEOC again asked Charter to respond and provided Charter with an extension, until August 16, 2019, to produce the requested information.  *Id.* at ¶ 4(e).  On August 16, 2019, Charter responded to EEOC's request for information.  *Id.* at ¶ 4(f).  In response to EEOC's request for documents relating to Charging Party's request for an accommodation, Charter produced documents related to communications between Charging Party and Sedgwick, Respondent's agent; communications between Charging Party's doctor and Sedgwick; and

communications from Sedgwick to Charter.  *Id.*  Respondent produced no documents relating to communications from Charter to Sedgwick, nor did it provide any documents reflecting the company's consideration of Charging Party's requests for pregnancy accommodations.  *Id.* Respondent objected to EEOC's request for information about other employees in New England who had sought accommodations for disability and/or pregnancy as "overly broad; unduly burdensome; not properly limited in temporal, geographic, or subject matter scope; not proportional to the needs of the case; not relevant to Charging Party's claims; and seeking confidential medical information from individuals who are not parties to this Charge and who have not consented to the disclosure of such information."  *Id.*

On September 11, 2019, after reviewing the information that Respondent produced, EEOC gave Respondent a second opportunity to voluntarily provide information about other employees in New England who had sought accommodations for disability and/or pregnancy. *Id.* at ¶ 4(g).  On September 26, 2019, Respondent stated to EEOC that it maintained its objections to providing information about other individuals who had sought accommodations for disability and/or pregnancy.  *Id.*

On October 28, 2019, EEOC sent Respondent a second request for information.  *Id.* at ¶ 4(h).  At this time, EEOC indicated that the documents previously produced by Respondent "indicate that Charging Party initially requested an accommodation to a lifting restriction and restriction on heights."  *Id.*  EEOC asked Respondent to provide copies of all documents concerning Respondent's receipt and evaluation of that request and to identify the individual(s) employed by Respondent who decided to deny that request.  *Id.*  Additionally, EEOC narrowed its request for comparator information to all Field Technicians working in New England who, at any time since September 1, 2016, requested a reasonable accommodation to a disability,

including information to assist the EEOC in contacting those individuals, a description of the work restriction(s) at issue, and information about what – if any – accommodation was provided. *Id.*  EEOC also sought identical information for any New England Field Technician who, since September 1, 2016, sought an accommodation to pregnancy or a condition related to pregnancy and/or child birth.  *Id.*

On November 15, 2019, Respondent sent EEOC a letter again objecting to providing any comparator information, citing the identical objections it had raised before.  *Id.* at ¶ 4(i). Respondent denied that Charging Party requested a lifting or height restriction, or that it had denied such a request.  *Id.*  On December 12, 2019, EEOC sent Charter an email explaining, again, that it sought communications between Charter and Sedgwick concerning Charging Party's request for an accommodation.  *Id.* at ¶ 4(j).  On December 13, 2019, in response to EEOC's request for information about Charter's consideration of Charging Party's request for an accommodation to lifting and height requirements, Charter referred EEOC to documents it had previously produced.  *Id.* at ¶ 4(k).  Charter also stated that its December 13, 2019 correspondence "will serve as Charter's final response to the Commission's request for additional information."  *Id.*

On December 19, 2019, EEOC issued Subpoena No. NY-A20-006 with a return date of January 9, 2020.  *Id.* at ¶ 4(l).  Rather than respond to the Subpoena, Charter sent the Commission a Petition to Revoke the Subpoena.  *Id.* at ¶ 6.  On February 6, 2020, the Commission issued a Determination denying Respondent's Petition and providing it with ten days to produce the materials sought.  *Id.* at ¶ 7.  To date, Charter has not produced any of the documents sought in EEOC Subpoena No. NY-A20-006 and has not complied with the Commission's determination.

**ARGUMENT**

### I.      Legal Standard

"Title VII of the Civil Rights Act of 1964 permits the Equal Employment Opportunity

Commission (EEOC) to issue a subpoena to obtain evidence from an employer that is relevant to

a pending investigation." *McLane Co. v. EEOC,* 137 S. Ct. 1159, 1164 (2017), *as revised* (Apr.

3, 2017).  Relevance, in this context, is understood as allowing EEOC "access to virtually any

material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.,*

466 U.S. 54, 68-69 (1984).  Through Title VII, "Congress intended [the EEOC] to have broad

access to information relevant to the inquiries it is mandated to conduct." *EEOC v. Ford Motor*

*Credit Co.,* 26 F.3d 44, 47 (6th Cir. 1994).  The Commission's administrative subpoenas will be

enforced where (1) Congress has granted authority to investigate; (2) the procedural

requirements have been met; and (3) the evidence sought is relevant and material to the

investigation.  *Univ. of Pa. v. EEOC,* 493 U.S. 182, 191 (1990); *see also U.S. v. Comley,* 890

F.2d 539, 541 (1st Cir. 1989); *EEOC v. McLane Co., Inc.,* 857 F.3d 813, 816-17 (9th Cir. 2017),

*rev'd on other grounds*, *McLane Co. v. EEOC, supra*.  Once this showing has been made, a court

will enforce the subpoena unless the Respondent can prove that the subpoena is unduly

burdensome.  *McLane Co., Inc. v. EEOC,* 137 S. Ct. at 1165.

EEOC subpoena-enforcement proceedings are summary in nature and subject to limited

judicial review.  *EEOC v. Mar. Autowash, Inc.,* 820 F.3d 662, 665 (4th Cir. 2016); *EEOC v.*

*Konica Minolta Bus. Solutions U.S.A., Inc.,* 639 F.3d 366, 368 (7th Cir. 2011); *EEOC v. Fed.*

*Express Corp.,* 558 F.3d 842, 848 (9th Cir. 2009); *see also U.S. v. Sturm, Ruger & Co., Inc.,* 84

F.3d 1, 5 (1st Cir. 1996) ("Subpoena enforcement proceedings are designed to be summary in

nature, and an agency's investigations should not be bogged down by premature challenges to its

regulatory jurisdiction.") (internal citations omitted).  "A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint." *McLane v. EEOC,* 137 S. Ct. at 1165.

A.  The subpoena is a valid exercise of the agency's authority.

Congress has authorized, and indeed mandated, that EEOC investigate charges of discrimination alleging that Title VII has been violated.  42 U.S.C. § 2000e-5(b).  Congress has conferred on the Commission broad powers of access to records of those entities against whom charges have been filed, 42 U.S.C. § 2000e-8(a), including the authority to subpoena evidence in an investigation, 29 U.S.C. § 161 (incorporated into Title VII by 42 U.S.C. § 2000e-9).  Here, EEOC is investigating the Charging Party's allegations that Charter engaged in sex and pregnancy discrimination in violation of Title VII.  Such an investigation is within the agency's statutory authority.  Thus, the subpoena is a valid exercise of the agency's authority and should be enforced.  *See Sturm, Ruger & Co.,* 84 F.3d at 5-6 ("As long as the agency's assertion of authority is not obviously apocryphal, a procedurally sound subpoena must be enforced.") (citing *EEOC v. Kloster Cruise Ltd.,* 939 F.2d 920, 923 (11th Cir. 1991).

B.  The procedural requirements have been met.

A valid charge has been filed with the Commission, and the subpoena contains all the information required by the Commission's regulations.  *See* 29 C.F.R. § 1601.16(a) (elements of subpoena);[1] *see also Shell Oil Co.,* 466 U.S. at 67-74 (1984) (addressing requirements of a valid charge); 29 C.F.R. § 1601.12 (same).

---

[1]      29 C.F.R. § 1601.16(a) states, in relevant part:

> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested.  A subpoena shall be returnable to a duly authorized investigator or other representative of the Commission.

Charter challenges the EEOC's authority to issue the subpoena, asserting that the underlying charge was filed more than 300 days after the discriminatory acts alleged and, as such, is untimely.  Although the charge was not verified until February 1, 2019 (more than 300 days after the termination of Charging Party's employment on February 18, 2018), Charging Party's initial charge was submitted to EEOC prior to the 300-day deadline, making the underlying charge timely.

On April 2, 2018, Charging Party sent a letter to EEOC that stated, "This document is my complaint against Charter Communications." An Decl., ¶ 4(a).  The April 2, 2018 Letter, submitted well within the 300-day statute of limitations, contained Charging Party's name, the name of her employer, and a detailed description of the alleged discrimination, including Charging Party's prior attempts to work with her employer to resolve the matter.  *See* Letter, attached as Exhibit A, to An Decl.[2]  Under the circumstances, the Commission reasonably construed Charging Party's April 2, 2018 letter "as a request for the [Commission] to take remedial action to protect [her] rights or otherwise settle a dispute between the employer and the employee."  *Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 402 (2008).  On December 12, 2018, within the 300-day period, EEOC issued Respondent a notice of charge identifying Charging Party as the complainant.  An Decl., ¶ 4(b).  On February 1, 2019, Charging Party perfected her charge by signing and verifying her allegations, and EEOC served the perfected charge (which attached Charging Party's April 2, 2018 letter) on Respondent.  *Id.* at ¶ 4(c).

The Commission's regulations permit amendment of a timely-filed charge to "cure technical defects or omissions," such as signature and verifications.  *See* 29 C.F.R. § 1601.12.

---

[2]     This exhibit has been redacted because Charging Party's letter references the charge of another individual. Title VII prohibits the Commission from making public information about a charge that is not subject to this Application.  *See* 42 U.S.C. § 2000e-5(b).  Respondent has received an un-redacted version of the document.

The regulation does not place any restrictions on the types of technical defects that may be cured later.  The Supreme Court had held that this regulation, which permits an individual to file a timely charge and verify it "after the time for filing has expired," is lawful and consistent with both the language and purpose of Title VII.  *See Edelman v. Lynchburg College,* 535 U.S. 106, 109 (2002).

The First Circuit has considered a similar situation where a charging party filed a timely (but not verified) intake questionnaire with the Massachusetts fair employment practices agency (MCAD).  *See Aly v. Mohegan Council, Boy Scouts of Am.,* 711 F.3d 34, 40 (1st Cir. 2013).  There, the charging party later perfected his charge – after the 300 days had passed.  *Id.*  Examining both MCAD's regulations and Title VII's regulations, the First Circuit held that the charging party had not missed the 300-day filing deadline because his subsequent charge constituted an amendment of his timely intake questionnaire and effectively cured the technical defect (lack of verification).  *Id.* at 44.

The allegations in Charging Party's perfected February 1, 2019 charge relate back to her timely-filed April 2, 2018 complaint.  *See Edelman,* 535 U.S. at 115 ("Construing § 706 to permit the relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently.").  Respondent was aware, by December 12, 2018, when it received the notice of charge, that Charging Party had filed a charge of discrimination with EEOC and that her allegations related to sex discrimination, and Title VII's goal of encouraging aggrieved individual's to "raise a discrimination claim before it gets stale" satisfied.  *Id.* at 112-13.  As such, any argument by Charter regarding timeliness is without merit and does not prevent enforcement of the subpoena.

Moreover, where there is a dispute as to the timeliness of the underlying charge, courts generally have ordered enforcement of EEOC's subpoenas. *See, e.g., EEOC v. Schwan's Home Serv.,* 644 F.3d 742, 746-47 (8th Cir. 2011) ("the appropriate time to address the timeliness issue is if and when an actual lawsuit is filed, not during the subpoena enforcement stage"). In *EEOC v. City of Norfolk Police Dep't,* 45 F.3d 80 (4th Cir. 1995), the court stated that a trial court should decline to enforce a subpoena only if the charge is untimely on its face, conceded to be untimely, or "the untimeliness of the charge is 'otherwise apparent'." *Id.* at 83. Since the Commission presented a colorable argument that the charge in *Norfolk Police* was timely, the appellate court enforced the subpoena. *Id.* at 85; *accord EEOC v. Tempel Steel, Co.,* 814 F.2d 482, 485 (7th Cir. 1987) ("a timeliness defense may not be raised to block enforcement of an EEOC subpoena" although "an exception might exist if the party under investigation were able to establish that there was clearly no factual or legal support for the agency's preliminary determination to investigate"). That Charter may have a defense to any civil action later filed by Charging Party does not prevent enforcement of the subpoena. *See EEOC v. Randstad,* 685 F.3d 433, 442 (4th Cir. 2012) ("The process of reviewing an administrative subpoena for judicial enforcement is not one for a determination of the underlying claim on its merits") (internal citation omitted); *see also EEOC v. Dillon Cos., Inc.,* 310 F.3d 1271, 1277 (10th Cir. 2002) ("We will not … either encourage or allow an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial.").

Here, EEOC has presented more than a colorable argument that the underlying charge of discrimination is timely. Indeed, as described above, EEOC has presented compelling reasons to find that the charge is timely. Where Charging Party submitted a detailed letter prior to the 300-

day deadline, identifying her employer, describing the alleged unlawful conduct, and outlining

her previous, unsuccessful attempts to resolve the dispute with her employer and later amended

her charge to include verification and signature, she has complied with Title VII's procedural

requirements.  *See Edelman,* 535 U.S. at 115.  Thus, there is both factual and legal support for

EEOC's preliminary determination to investigate, and the subpoena should be enforced.

C.  <u>The evidence sought is relevant and material to the investigation.</u>

The information sought by the subpoena is relevant to the issue of pregnancy

discrimination under investigation.  The concept of relevance during an EEOC investigation

sweeps more broadly than notions of relevance in litigation.  Section 709(a) grants EEOC access

to "any evidence of any person being investigated or proceeded against that relates to unlawful

employment practices covered by this subchapter and is relevant to the charge under

investigation."  42 U.S.C. § 2000e-8(a).  "Since the enactment of Title VII, courts have

generously construed the term 'relevant' and have afforded the Commission access to virtually

any material that might cast light on the allegations against the employer."  *EEOC v. Shell Oil

Co.,* 466 U.S. 54, 68-69 (1984).

Here, it is undeniable that the requested information "might cast light on the allegations

against the employer."  *See id.*  Charging Party alleges that she was subject to disparate treatment

because of her sex/pregnancy.  Charging Party further alleges that she was treated less favorably

than similarly situated employees outside her protected class.  Thus, Respondent's treatment of

other Field Technicians who have sought accommodations because of disability, pregnancy,

pregnancy-related conditions, or conditions related to child birth is plainly relevant.  *McDonnell

Douglas Corp v. Green,* 411 U.S. 792, 804 (1973) (comparator evidence is especially relevant to

disparate treatment claim); *Mesnick v. General Electric Co.,* 950 F.2d 816, 824 (1st Cir. 1991)

(evidence of "differential treatment in the workplace" is common example of evidence properly used to demonstrate discrimination); *EEOC v. Cambridge Tile Mfg. Co.,* 590 F.2d 205, 206 (6th Cir. 1979) ("The existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors.") (*quoting Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir. 1969)).

In *Young v. United Parcel Service, Inc.,* 575 U.S. 206, 229 (2015), the Supreme Court noted that "a plaintiff alleging that the denial of an accommodation constituted disparate treatment … may make out a prima facie case by showing … that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'"  Evidence demonstrating Charter's treatment of non-pregnant workers who sought accommodations because of restrictions on their ability to work is relevant to Charging Party's claim.  *Young,* 575 U.S. at 229.  Similarly, evidence that Charter treated pregnant workers seeking accommodations less favorably than non-pregnant workers seeking accommodations is also relevant to Charging Party's claim.  *Id.* ("by providing sufficient evidence that the employer's policies impose a significant burden on pregnant workers," a plaintiff may show intentional discrimination.); *see also VF Jeanswear LP,* 769 Fed. Appx. 477, 478 (9th Cir. 2019) ("EEOC subpoenas are enforceable so long as they seek information relevant to any of the allegations in the charge, not just those directly affecting the charging party.").

Charter's complaint that EEOC's request is not properly limited in temporal or geographic scope is not supported.  As an initial matter, EEOC's broad discretion under Title VII extends to establishing the appropriate time frame for the investigation.  *See Randstad,* 685 F.3d

at 451 (concluding that "the thirteen-office, five-year scope of the subpoena was not an unreasonable exercise of the EEOC's discretion"); *EEOC v. Kronos, Inc.,* 620 F.3d 287, 299 (3d Cir. 2010) (district court abused its discretion by limiting temporal scope of subpoena; "[e]vidence related to the employment practice under investigation prior to and after [the charging party's] charge provides valuable context that may assist the EEOC in determining whether discrimination occurred."). Here, EEOC's request is limited in temporal scope to a time period beginning approximately six months prior to Charging Party's initial request for an accommodation through the present. The Commission seeks a large enough sample of comparators to allow it to conduct a meaningful analysis as set forth in *Young*. The combination of the temporal and geographic scope should, hopefully, provide the Commission with a critical mass of evidence with which it can evaluate Charging Party's allegations.[3]

Charging Party may prove her allegations of disparate treatment by demonstrating that Respondent places a significant burden on pregnant workers. *Young,* 575 U.S. at 229. A "plaintiff can create a genuine issue of material fact as to whether a significant burden exists by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id.* at 229-230. The subpoena seeks evidence appropriate to this inquiry. The request for information is limited to individuals who perform job duties similar to those performed by Charging Party, i.e., Field Technicians, and to New England, where Charging Party worked. To undertake the analysis described by the Supreme Court in *Young,* it is necessary for the EEOC to look beyond Charter's

---

[3]     EEOC first sought comparator information, on July 1, 2019, for all of Respondent's New England employees from September 1, 2016 through the present. On September 11, 2019, after Charter objected to producing such information, EEOC provided Charter with a second opportunity to voluntarily comply with its July 1st request. On October 28, 2019, EEOC sent a new, narrowed request for comparator information, limiting the scope of individuals about whom it sought information to New England Field Technicians. This is consistent with EEOC's practice of attempting voluntary compliance before resorting to issuing a subpoena.

decision with respect to Charging Party's request for a reasonable accommodation.  Because

Charging Party's allegation is one of disparate treatment, it is reasonable to compare Charter's

treatment of Charging Party to its treatment of other similarly situated workers, both pregnant

and not pregnant.  *See Young,* 575 U.S. at 231 (finder of fact will consider "why, when the

employer accommodated so many, could it not accommodate pregnant women as well?").  The

information sought in the subpoena is thus appropriate in temporal and geographic scope given

the type of evidence the Supreme Court has described as relevant to a claim of pregnancy

discrimination.

Moreover, where, as here, an employer relies on nationwide policies and uniform

procedures to support its decision, relevant information is not limited to the specific location

where Charging Party was employed.  *See, e.g., EEOC v. United Parcel Service, Inc.,* 587 F.3d

136, 139-40 (2d Cir. 2009) (accommodation and hiring decisions made at company's facilities

nationwide relevant to charges alleging religious discrimination at individual facility); *EEOC v.

Univ. of Pittsburgh,* 643 F.2d 983, 985-86 (3d Cir. 1987) (lists and information concerning all

instructors and teaching positions in four professional schools relevant to charge of sex

discrimination in compensation in school of nursing), *cert. denied,* 454 U.S. 880 (1981).

For these reasons, the information sought by the subpoena is relevant to the charge under

investigation, and the subpoena should be enforced.

      D.  Privacy and confidentiality are sufficiently safeguarded by the statute.

The subpoena requires Charter o provide EEOC with the names, addresses, telephone

numbers, and medical information for Charter employees other than the Charging Party.  Charter

complains that it cannot be required to produce such information because it is, by nature, private.

Confidentiality, however, is not a bar to enforcement of an administrative subpoena. *See EEOC v. Assoc. Dry Goods Corp.,* 449 U.S. 590, 604 (1981) (holding employer did not have "a categorical right to refuse to comply with EEOC subpoena unless the Commission assured that the information would be held in absolute secrecy").

"[C]onfidentiality is no excuse for noncompliance [with an EEOC subpoena] since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination." *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 312 (7th Cir. 1981); *see EEOC v. Morgan Stanley & Co., Inc.,* 132 F. Supp. 2d 146, 154-55 (S.D.N.Y. 2000) (enforcing subpoena requiring production of comparator personnel files). Title VII imposes strict duties on the Commission and its employees to maintain confidentiality of information obtained as part of a Commission investigation. 42 U.S.C. § 2000e-8(e). The statute provides for financial and criminal penalties for employees who reveal information in violation of this provision. *Id.* As such, any concerns by Charter about the confidential nature of the information requested are insufficient to deny enforcement of the subpoena. *See EEOC v. Univ. of Pa.,* 493 U.S. 182, 192 (1990) (relying on confidentiality provisions of Title VII to reject university's argument that court require EEOC to show more than relevance as a condition of obtaining confidential, tenure-review materials); *EEOC v. McLane Co.,* 804 F.3d 1051, 1058 (9th Cir. 2015) (holding the employer must provide social security numbers to EEOC and observing that "Congress has struck the balance between granting the EEOC access to relevant evidence and protecting confidentiality interests by imposing strict limitations on public disclosure of information produced during the course of an EEOC investigation"), *rev'd on other grounds,* 137 S. Ct. 1159 (2017); *EEOC v. Univ. of N.M.,* 504 F.2d 1296, 1303 (10th Cir. 1974) (requiring production of personnel information even

though such records were "both confidential and extremely sensitive").  Finally, the information requested is crucial to determining whether discrimination occurred, and that concern outweighs any individual privilege or confidence.  *See Gen. Tel. Co. v. EEOC,* 446 U.S. 318, 326 (1980) (the Commission acts "to vindicate the public interest in preventing employment discrimination"); *Morgan Stanley,* 132 F. Supp. 2d at 154 ("Law enforcement and our system of justice depend on the ability of investigators, litigants, and courts to acquire information, sometimes from reluctant parties.").

> E.  The existence of an arbitration agreement does not divest EEOC of the authority to investigate the charge of discrimination.

Charter has objected to complying with EEOC's subpoena because, it contends, Charging Party's claims are subject to an arbitration agreement between Charging Party and Charter.  This argument is unavailing.  The Commission's authority to investigate "is not negated simply because the party under investigation may have a valid defense to a later suit."  *EEOC v. United Air Lines, Inc.,* 287 F.3d 643, 651 (7th Cir. 2002), *citing EEOC v. Tempel Steel Co.,* 814 F.2d 482, 486 (7th Cir. 1989); *see also EEOC v. Dillon Cos., Inc.,* 310 F.3d 1271, 1277 (10th Cir. 2002) ("We will not … either encourage or allow an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial.").  Moreover, the fact that an employee and her employer may have entered into an agreement to arbitrate certain claims does not divest EEOC of its authority to investigate a charge of discrimination filed by that employee.  *See EEOC v. Waffle House, Inc.,* 534 U.S. 279, 288 (2002) (noting EEOC's "independent statutory responsibility to investigate and conciliate claims" even where the charging party signed an arbitration agreement).  As such, the availability of a potential defense to a claim by Charging Party does not constitute appropriate grounds to deny enforcement of the subpoena.

## II.     Respondent Cannot Establish That Enforcement of the Subpoena is Unduly Burdensome.

Charter, as the Respondent, bears the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *EEOC v. Children's Hosp. Med. Ctr. Of N. Cal.,* 719 F.2d 1426, 1428 (9th Cir. 1983). Charter carries a "difficult burden" in establishing that compliance with the subpoena would impose an undue burden. *EEOC v. United Air Lines, Inc.,* 287 F.3d 643, 653 (7th Cir. 2002). To meet this difficult standard, Charter must show that the cost of compliance with the subpoena is "unduly burdensome in the light of the company's normal operating costs." *EEOC v. Md. Cup Corp.,* 785 F.2d 471, 479 (4th Cir. 1986); *see United Airlines,* 287 F.3d 643 at 653 ("Often we have phrased this 'difficult burden' as requiring a showing that 'compliance would threaten the normal operation of a respondent's business."), (quoting *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir. 1981)).

Charter cannot meet this difficult standard. For example, in *Maryland Cup,* the court held that it was not unduly burdensome to require the company to spend $75,000 (in 1985 dollars) to inspect photo identifications to identify the race of employees and to interview employees in order to determine the last-known addresses and telephone numbers of former employees. *Maryland Cup,* 785 F.2d at 479. Similarly, in *EEOC v. Alliance Residential Co.,* 866 F. Supp. 2d 636 (W.D. Tex. 2011), the court found that "manual review of personnel files does not rise to the level of an undue burden." In *EEOC v. Citicorp Diners Club, Inc.,* 985 F.2d 1036, 1040 (10th Cir. 1993), the court found that the employer's assertion that responding to the subpoena would "require two full-time employees working approximately six months" did not constitute an undue burden on a company that employed approximately 1,100 people.

A court will not excuse compliance with a subpoena for relevant information on the grounds of burdensomeness unless the company can establish that "compliance threatens to

unduly disrupt or seriously hinder normal operations of a business."  *Id.*; *see also NLRB v. Champagne Drywall, Inc.,* 502 F. Supp. 2d 179, 181 (D. Mass. 2007) (same).  Such a showing requires evidence both of the cost of compliance and the company's "normal operating costs," and a finding that "gathering the requested information would 'threaten' or 'seriously disrupt' [Respondent's] business operations."  *EEOC v. Randstad,* 685 F.3d 433, 452 (4th Cir. 2012); *see also EEOC v. Aaron Bros., Inc.,* 620 F. Supp. 2d 1102, 1108 (C.D. Cal. 2009) (respondent failed to meet its burden of showing that subpoena is overbroad and unduly burdensome where it failed to produce evidence of the size of its operations and capacity to handle costs of compliance).

Here, it is difficult to imagine how Charter, which employs nearly 100,000 employees and provides broadband communication services in more than 40 states, could demonstrate that the cost of complying with a subpoena seeking information related to Field Technicians in a six-state area over a three-and-a-half year period would threaten the company's business operations. *See EEOC v. VF Jeanswear LP,* 769 Fed. Appx. 477, 478 (9th Cir. 2019) (where company employed approximately 2,500 employees, cost of over $10,000 to comply with subpoena was not unduly burdensome).  Importantly, Charter has never provided the Commission with any specific estimate of the cost involved or any analysis of how compliance with the subpoena would impact its business operations.  *See* Respondent's Petition to Revoke, attached to An Decl. as Exhibit L.  Even if compliance requires Charter to manually review Field Technician personnel and medical files, that is not a basis for revoking the subpoena.  *See Alliance Residential,* 866 F. Supp. 2d at 645 ("The manual review of personnel files does not rise to the level of an undue burden.").[4]  Because the cost of compliance – even if high here – must be

---

[4]      Based on the records Charter has produced thus far in the investigation, it appears that Charter does keep – or has access to – employee records kept in electronic format, including records that track requests for accommodation and whether pregnancy (as opposed to some other condition) is the reason for the request.

considered within the context of the Respondent's size, Charter cannot establish that compliance with EEOC's subpoena would seriously disrupt Charter's business operations.  *See EEOC v. A.E. Stanley Mfg. Co.,* 711 F.2d 780, 788 (7th Cir. 1983) (employer must put forth evidence that enforcement of the subpoena would threaten normal business operations to demonstrate that compliance would cause an undue burden).

Moreover, Charter cannot support its undue burden argument based on a complaint that EEOC's subpoena requires it to "create" records that do not presently exist.  EEOC's subpoena power is "not limited to the production of documents already in existence.  Rather, the enabling statute grants the EEOC broad authority to require the production of *any* evidence."  *Maryland Cup,* 785 F.2d at 479 (although the information sought by subpoena may only have existed in the minds of the company's employees, the company was required to produce the information) (internal quotations omitted) (emphasis in original).  Indeed, courts have required respondents to assemble lists, summaries and other data compilations in response to EEOC subpoenas.  *See EEOC v. Citicorp Diners Club, Inc.,* 985 F.2d 1036, 1039 (10th Cir. 1993) ("EEOC may compel an employer to compile information within its control in order to respond to a subpoena"); *Motorola, Inc. v. McLain,* 484 F.2d 1339, 1346 (7th Cir. 1973) ("There is nothing unique about a requirement to compile and furnish lists, names, addresses and telephone numbers."); *see also NLRB v. Champagne Drywall, Inc.,* 502 F. Supp. 2d 179, 181 (D. Mass. 2007) (where information sought, in its "raw data form," existed and was within respondent's control, court required respondent to "compile the data into the format as requested by the subpoenas.").

Finally, "There is a presumption in favor of requiring an employer's compliance with a subpoena when the Commission inquires into legitimate matters of public interest."  *EEOC v. Konica Minolta Business Solutions U.S.A., Inc.,* 639 F.3d 366, 371 (7th Cir. 2011).  Pregnancy

discrimination continues to be a matter of public concern, as recent news reports confirm.[5]

Charter has never provided the Commission with any evidence of the costs involved in

complying with the subpoena, nor has it provided information about its normal operating

expenses.  Charter should not be insulated from the law either because of the size of its

workforce or because the allegations in the charge of discrimination may be difficult to prove

without reviewing numerous documents relevant to comparator evidence and the company's

general practices.  Any inconvenience Charter may suffer as a result of responding to the

subpoena does not rise to the level of undue burden.  As such, the subpoena should be enforced.

## CONCLUSION

For the reasons stated above, the Court should enforce EEOC's subpoena.  The subpoena

seeks information relevant to a valid charge of discrimination, the investigation of which is

within the EEOC's enforcement authority.  Additionally, Charter cannot plausibly establish that

compliance with the subpoena would constitute an undue burden.  The Commission therefore

respectfully requests that the Court issue the accompanying proposed Order to Show Cause and,

after providing Respondent an opportunity to be heard, enforce the subpoena.

---

[5]      *See, e.g.,* Natalie Kitroeff and Jessica Silver-Greenberg, *Pregnancy Discrimination is Rampant Inside America's Biggest Companies*, N.Y. Times (Feb. 8, 2019), https://www.nytimes.com/interactive/2018/06/15/business/pregnancy-discrimination.html.

Dated: March 13, 2020

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

JEFFREY BURSTEIN
Regional Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3770
jeffrey.burstein@eeoc.gov


_/s/ Sara Smolik_
SARA SMOLIK (BBO#661341)
Senior Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Boston Area Office
John F. Kennedy Federal Building
Room 475
Boston, MA 02203-0506
(617) 565-3207 (telephone)
(617) 565-3196 (fax)
sara.smolik@eeoc.gov


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on Respondent's Chief Executive Officer, Thomas M. Rutledge, 12405 Powerscourt Drive, St. Louis, MO 68131, with a copy to Respondent's counsel, Kayt Kopen, Esq., Husch Blackwell, LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, by U.S. Mail, postage prepaid, on March 27, 2018.


_/s/ Sara Smolik_
Sara Smolik
Senior Trial Attorney

22